SOUTHWESTERN TELEGRAPH AND TELEPHONE COMPANY *v.* BRUCE.

Opinion delivered March 15, 1909.

1. TELEGRAPHS AND TELEPHONES—STRINGING WIRES ACROSS LOTS—CARE.— Where a telephone company strings its wires across vacant lots, it owes to persons accustomed to go there the same duty to use due and reasonable care in maintaining such wires which it owes with respect to its wires in the streets. (Page 587.)

2. SAME—DUTY TO PREVENT ESCAPE OF ELECTRICITY.—An electric company is held to use ordinary care to prevent injury by the transmission through its wires, suspended over streets and vacant lots, of electricity escaping from any other wires that might come into contact with them. (Page 588.)

3. NEGLIGENCE—PRESUMPTION FROM INJURY.—Where an injury is caused by a thing or instrumentality that is under the control or management of the defendant, and the injury is such that in the ordinary course of things it would not occur if those who have such control or management use proper care, the happening of the injury is *prima facie* evidence of negligence, and shifts to the defendant the burden of proving that it was not caused through lack of care on defendant's part. (Page 588.)

4. SAME—PRESUMPTION AS TO ELECTRIC WIRES.—The rule that the happening of an injury is *prima facie* evidence of negligence applies to electric companies having control and management of their wires and apparatus and almost exclusive knowledge of the facts relative thereto. (Page 588.)

5. SAME—PRESUMPTION REBUTTABLE.—While the happening of an injury from a telephone wire coming in contact with a trolley wire raises a presumption of negligence on part of the telephone company, such presumption is *prima facie* merely, and not conclusive. (Page 588.)

6. SAME.—Although the evidence raised a *prima facie* presumption of negligence on defendant's part, it was error to direct a finding for

the plaintiff unless the conclusion of defendant's negligence from the evidence was indisputable.    (Page 589.)

7.    SAME—DIRECTING VERDICT.—Where there was evidence tending to prove that defendant telephone company was not guilty of negligence in maintaining its wires, and that plaintiff's injury was due to the negligence of a third person, it was error to give an instruction asked by plaintiff which in effect directed a verdict against defendant.    (Page 589.)

8.    NEGLIGENCE—CONCURRENT CAUSE OF INJURY.—The concurring negligence of two persons makes both liable to a third person who is injured thereby, if the injury would not have occurred from the negligence of one of them only.    (Page 590.)

Appeal from Sebastian Circuit Court; *Daniel Hon,* Judge; r versed.

STATEMENT BY THE COURT.

This was a suit instituted by the appellee, who was plaintiff below, against appellant, in which he alleged that the defendant had negligently erected and strung its telephone wires across a street and over certain vacant lots in the city of Fort Smith in such a manner as to endanger persons thereon; that the wires had become detached from their fastenings by reason of having been negligently strung and maintained, and that the plaintiff had come in contact therewith; that the telephone wire had come in contact with a wire of the street railway, and had thereby become charged with electricity, as a result of which plaintiff was severely burned about his hands, arms and body, disabling him for a great length of time and permanently injuring his fingers and hand.

The defendant in its answer denied that its wires were negligently strung and maintained, and that they were dangerous to persons on said streets or lots; denied that the wire had become detached from its fastening on account of any negligent manner. in which it was strung and maintained, and denied the other material allegations in the complaint.    It alleged that its wires were located and maintained and operated in a skillful manner, and further pleaded contributory negligence on the part of plaintiff.

The evidence upon the part of plaintiff tended to show that the defendant had stretched two of its wires from a pole located on North 16th Street, in the city of Fort Smith, across the street and thence across three vacant lots, and across an alley

to a house located upon North F Street; that the wires were attached to the pole on North 16th Street, at a height of about 24 feet from the ground, and were strung without any further support to the house on North F Street, a distance of 330 feet, where they were attached at a height of about 18 feet from the ground; that the wires were so strung as to cross over the trolley line of the street railway; that this trolley line was heavily charged with electricity, and that there were no guards or other mechanism to protect the telephone wires from the trolley wire; that this telephone wire was thus erected on May 23, 1907, and the accident complained of occurred on the 26th day of June, 1907. Plaintiff was a carpenter, and on June 25th, in connection with two other carpenters who were working under him, began the erection of a barn on the vacant lots. About ten o'clock of the morning of June 26th, they had raised some outside studding on the barn, and put one joist on that end thereof. This telephone wire ran through the barn, and the place where the barn was located was midway between the telephone pole on North 16th Street and the house whereon the telephone wires were attached, and the wires at this place were about nine or ten feet from the ground.

While these two men were working on the barn, one of the wires was lying on top of the joist, and one of the men stood the ladder up and threw the wire on the outside of the joist, and before he got upon the top of the ladder the wire broke and each end sprung back, one of the ends falling upon the foundation of a house which was being erected upon the vacant lots several feet from the barn. This workman claimed that he did not strike the wire with any hammer or other instrument, but that he did not know whether the ladder hit the joist or whether it hit the wire; that the wire broke out from the barn, but he did not know how far; that the joist was about fourteen or fifteen feet from the ground. At the time that the wire broke plaintiff was not present, but came within a few minutes thereafter, and, seeing the end of the wire lying on the foundation, asked who broke the wire, and immediately picked up the wire, and it severely shocked him, and injured him in the manner set out in the complaint. The evidence tended to show that when the telephone wire broke it fell across the trolley wire, by which it became heavily charged with electricity.

The testimony on the part of the defendant tended to show that the telephone wire was put up on May 23, 1907, and was No. 14 iron wire, which was regularly used for telephone wire by it, and was the best grade of galvanized wire, such as other companies used for this purpose. That this span of wire from the telephone pole to the house was about 300 feet, and that there was no danger of No. 14 wire breaking ordinarily when strung that distance. That the wires were securely attached at both ends, and that the poles and their fastenings were in good condition. That the wire was new when put up, and appeared new at time of accident, and that it was skillfully stretched from the pole to the house; and that under ordinary circumstances such wire would not break, and it would require an unusual strain to break such a wire when it was strung the distance that it was between the pole and the house. That servants of the defendant went to the wire upon the morning of the accident and shortly thereafter, and that it looked like the wire had been mashed at the place where broken, and seemed to be flattened a little on one side at the broken end, as though cut with a hatchet while resting on wood.

Upon the part of the plaintiff the court instructed the jury in substance that the defendant was required, in constructing and maintaining its lines of wire, to exercise that reasonable care and caution which would be exercised by a reasonably prudent person under similar circumstances, and to maintain its wires suspended a safe distance from the ground, and to guard its wires falling by the exercise of due care.

Instructions were also given relative to contributory negligence and the burden of proof thereof; and the following instructions were also given:

"4. If you find that plaintiff was injured by the wire in question, and that said wire was hanging down on said lot, and that said wire was erected, maintained and owned by the defendant, and was under its management and control, and that by contact with said wire the plaintiff, having a right to be on said property, was injured, a *prima facie* case of negligence is made out, and the burden was cast upon the defendant to show that this wire was hanging down through no fault of its servants and agents.

"9. If you find that the injury was the result of the concurring negligence of two parties, and would not have occurred in

the absence of either, you are charged that the negligence of both parties was the proximate cause of the injury, and defendant is not excused because of the other concurring act of negligence.

"10.   Plaintiff claims that at the place where he was injured the defendant had stretched two of its wires from a pole located on North Sixteenth Street across the street, thence across lots numbered 1, 2 and 3, block 33, Fitzgerald Addition to the city of Fort Smith, Arkansas; thence across an alley running back of said lots running parallel and between Sixteenth and Seventeenth Streets; thence to a house, number 1620 North F; that said wires were run across said lots, and in their course across said lots were allowed to run within 9 or 10 feet of the ground; that the distance between the pole on North Sixteenth Street where the wire started and house number 1620 North F, to which the wires were attached, was about 300 feet, and that for this distance said wires had no support except the aforesaid pole and the aforesaid house; and that wire was so constructed as to cross a trolley line, and that nothing had been done to protect the wire from the trolley wire; that defendant erected and allowed their wires to remain in this condition for many weeks, and they were in such condition just prior to the time plaintiff was injured; that plaintiff, who was engaged at work erecting a building at a point on said lot, by and with the consent of the owner, was injured by reason of one or both of these wires having fallen to the ground, on account of having been so erected and maintained. If you find from the evidence that the above facts are true, then you must find that defendant was guilty of negligence, and you must find for the plaintiff, unless you further find that plaintiff was guilty of contributory negligence."

Other instructions were given on the part of the plaintiff which are not necessary to be set out in order to convey a fair understanding of the issues involved on this appeal.

A number of instructions were given on the part of the defendant; and some requested by defendant were refused.

The jury returned a verdict for the plaintiff, assessing his damages at $3,000. And from the judgment entered thereon defendant has appealed to this court.

*Walter J. Terry,* for appellant; *Brizzolara & Fitzhugh,* of counsel.

1. The question in this case, underlying the evidence and all the instructions, is whether or not defendant used ordinary care in the construction and maintenance of its line. There was error in the instructions. Keasbey on Electric Wires, §§ 271-2; 112 S. W. 392; 63 L. R. A. 416; 11 *Id.* (N. S.) 684-8; Watson on Dam. for Pers. Inj. §§ 59, 60, 82, 161.

2. The 10th instruction is a peremptory charge to find for the plaintiff, and should not have been given. 83 Ark. 195; 85 Ark. 138.

3. Appellant's 13th prayer should have been given. The appellant was not bound to anticipate the intervening acts or negligence of third parties, and this issue should have been submitted to the jury. 110 S. W. 12, 1037.

4. Appellant's negligence was not the proximate cause of the injury. 109 Tenn. 331; 70 S. W. 616; 62 N. J. 451; 7 Am. Elec. Cas. 529.

*Ben D. Kimpel,* for appellee.

1. The evidence shows a clear case of negligence without any excuse. No excuse is shown. The company took the risk of damaging some one because it was too expensive to place another pole for its wires. 9 Am. Neg. Rep. 528.

2. Ordinarily, the question of negligence is for the jury, but the facts in this case leave no room for doubt, as they are undisputed, and a peremptory instruction could well have been given. 71 Ark. 447; 57 *Id.* 461; 138 Fed. 638; Thompson on Neg. § 7393.

3. The stringing of wires in the manner and place in question was attended with great peril to the public, and required great caution and supervision. 31 L. R. A. 566.

4. When a wire is down, and no explanation is made, a *prima facie* case of negligence is made. *Res ipsa loquitur.* 57 Ark. 429; 26 L. R. A. 810; 57 *Id.* 625; 31 *Id.* 572, 589.

5. It was negligence to permit the wires to sag near the ground. 12 L. R. A. 249; 4 *Id.* 515.

6. The 9th instruction is sustained by 73 Ark. 112; 61 *Id.* 112; 63 L. R. A. 116; 11 L. R. A. (N.S.) 684.

7. While the 10th instruction is bad in form, the form is no ground of reversal. 67 Ark. 147.

FRAUENTHAL, J., (after stating the facts). The liability of

the defendant in this case depends upon the duty which it owed to the plaintiff under the circumstances of this case and the manner in which it performed that duty. The defendant owned and controlled a telephone system in the city of Fort Smith. It had strung its telephone wires from a pole on North 16th Street to a house on North F Street for a distance of from 300 to 330 feet, making one span unsupported between these points. The telephone wires extended above the electric wires of a street car company which were heavily charged with electricity. The telephone wires were wholly unprotected from coming in contact with the trolley wires, should they fall. They were stretched across vacant lots where they sagged down to a distance of 9 or 10 feet from the ground. The telephone wires were maintained in this way for several weeks before the accident occurred by which the plaintiff was injured. Upon the vacant lots a house was being erected, and on the day of the accident the plaintiff was employed in erecting a barn on the vacant lots near the house. The wires ran through the barn, and in the absence of the plaintiff one of the wires broke, and one end thereof lay hanging down on the foundation of the house when the plaintiff returned to his work. He picked the wire up to throw it aside, and was burned and injured by an electric shock. In breaking, the telephone wire fell across the trolley wire, and thus became heavily charged with the current of electricity. The plaintiff was rightfully upon the lots engaged under employment in erecting structures thereon. The defendant in running its wires across these lots owed to the people who were accustomed to be on and go across these lots the same duty to use the same care in maintaining its wires as it did to those upon the streets of the city where it had its wires. *Guinn* v. *Delaware & A. Tel. Co.,* 62 Atl. 412.

The plaintiff and other mechanics had been engaged for several days in their work on these lots, and were accustomed with other people to travel on and across the lots. The defendant had no interest in the lots, and showed no special permission or right from the owner to stretch its wires across the lots.

The defendant was under the duty to so maintain its wires as not to interfere with the safe use of the lots. It owed the duty to the plaintiff and those accustomed to go on and across these lots to exercise due and reasonable care in maintaining these wires.

This electric company owed the duty to plaintiff to use ordinary care to prevent injury by the transmission through its wires, suspended over the streets and these vacant lots, of electricity escaping from any other wires that might come in contact with them. *City Electric Street R. Co.* v. *Conery,* 61 Ark. 381; *Rowe* v. *N. Y. & N. J. Tel. Co.,* 9 Am. Neg. Rep. 528.

And, where the defendant owes a duty to plaintiff to use care, and an accident happens causing injury, and the accident is caused by the thing or instrumentality that is under the control or management of the defendant, and the accident is such that in the ordinary course of things it would not occur if those who have control and management use proper care, then, in the absence of evidence to the contrary, this would be evidence that the accident occurred from the lack of that proper care. In such case the happening of the accident from which the injury results is *prima facie* evidence of negligence, and shifts to the defendant the burden of proving that it was not caused through any lack of care on its part. *Railway Co.* v. *Hopkins,* 54 Ark. 209; *Railway Co.* v. *Mitchell,* 57 Ark. 418; *Arkansas Tel. Co.* v. *Ratterree,* 57 Ark. 429; *City Electric Street Ry. Co.* v. *Conery,* 61 Ark. 381; *Jack* v. *Reeves,* 78 Ark. 426.

Now, this rule applies to electric companies in the control and management of their lines and apparatus, for the further reason that they have almost exclusive knowledge of the facts relative thereto. The plaintiff ordinarily has not the power or opportunity to test these lines and apparatus; and it is reasonable that the party having the power and opportunity should be required to give an explanation of the accident, and to prove that it did not occur through a lack of care on its part. Keasbey on Electric Wires, § 271; *Newark Electric Light & Power Co.* v. *Ruddy,* 57 L. R. A. 624; *Denver Consolidated Elec. Co.* v. *Simpson,* 31 L. R. A. 566; *Western Union Tel. Co.* v. *State* use *Nelson,* 82 Md. 293.

But the happening of the accident under these circumstances is not a conclusive proof of negligence. As is said in the case of *Jacks* v. *Reeves,* 78 Ark. 426, where the court found from the circumstances of that case that the evidence of the accident was *prima facie* evidence of negligence, it "shifted the burden on to the defendant to prove that it was not caused by any

want of care on his part." 29 Cyc. 591; *Newark Elec. L. & P. Co.* v. *Ruddy,* 57 L. R. A. 624.

And so in this case we are of the opinion that the evidence on behalf of the plaintiff made out a *prima facie* case of negligence against the defendant by which the accident occurred to the injury of plaintiff. But we are also of the opinion that the testimony on behalf of the defendant tendered an issue. The testimony of the defendant, viewed in its most probative force, tended to prove that the wire when put up in May was new, and that all the apparatus was in good condition and was so maintained to the time of the accident. Witnesses on behalf of defendant testified that the wire was stretched over the trolley wire and from the pole to the house in a skilful manner; and it was also contended by defendant that the wire was broken or cut by the carpenters independent of and unconnected with defendant or any act of negligence on the part of defendant, and that this was not caused by the wire being improperly and negligently hung by defendant.

Before the jury can be instructed that the negligence on the part of the defendant has been conclusively proved, thus in effect directing a verdict upon that issue, that view of the evidence that is most favorable to the party against whom the verdict is thus directed must be taken; and if there is any evidence tending at all to establish the issue in his favor, such instruction should not be given. *LaFayette* v. *Merchants' Bank,* 73 Ark. 561; *Rodgers* v. *Choctaw, O. & G. R. Co.,* 76 Ark. 520; *Overton* v. *Matthews,* 35 Ark. 146; *Jones* v. *Lewis, ante* p. 368. "The better opinion would seem to be that, in order to justify the withdrawal of the question of negligence from the jury (or a peremptory finding of negligence by the jury), the facts must not only be undisputed, but such that the conclusion to be drawn from them is indisputable." 6 Thompson on Negligence, § 7393; 29 Cyc. 645.

Now, in the instruction number 10 set out in the above statement, which was given on the part of the plaintiff, the court, after reciting certain facts which the evidence on the part of the plaintiff tended to establish, instructed the jury that "if you find from the evidence that the above facts are true, then you must find that defendant was guilty of negligence, and you must find

for the plaintiff, unless you further find that plaintiff was guilty of contributory negligence."

This in effect was a peremptory instruction to the jury to find that negligence on the part of the defendant was conclusively proved and a peremptory instruction to find in favor of the plaintiff. But the facts set out in the instruction only made out a *prima facie* case of negligence. It wholly ignored the testimony introduced and the issues offered by the defendant.

According to this instruction number 10 given on the part of the plaintiff, it was the duty of the jury to return a verdict for the plaintiff without regard to the care, skill or diligence which the evidence might have shown was exercised by defendant, and without regard to any evidence that might tend to show that the carpenters cut or broke the wire without any fault or negligence of defendant. *Southwestern Tel. & Tel. Co.* v. *Beatty,* 63 Ark. 65; *Western Coal & Mining Co.* v. *Garner,* 87 Ark. 190.

The existence of negligence should be passed upon by the jury as any other fact, in the light of all the testimony in the case. 15 Cyc. 480.

In this instruction number 10 the court should only have told the jury that if they found the statements recited therein established by a preponderance of the evidence, then they would be justified in finding the defendant negligent; or that such facts, if established by a preponderance of the evidence, made out a *prima facie* case of negligence against the defendant.

The appellant contends that the court erred in giving instruction number 9, which is set out above and was given on the part of the plaintiff. But we are of the opinion that said instruction is not erroneous. "The fact that another person contributed either before the defendant's interposition or concurrently with such interposition in producing the damage is no defense." Wharton on Negligence (2d Ed.) § 144. In the case of the *City Electric Street Ry. Co.* v. *Conery,* 61 Ark. 381, it is said: "The injury was the result of the concurring negligence of the two parties, and would not have occurred in the absence of either. In that case the negligence of the two was the proximate cause of the same, and both parties were liable." *St. Louis, I. M. & S. Ry. Co.* v. *Coolidge,* 73 Ark. 112; *Hayes* v. *Hyde Park,* 12 L. R. A. 249.

The defendant duly saved exceptions to the giving of each

and all the instructions that were given at the request of plaintiff, and also to the refusal to give certain instructions requested by it, and here urges each of these exceptions as an error. It also urges that error was committed in permitting the introduction of certain testimony. We do not think it necessary to set out each of these contentions. We have carefully examined the instructions and the testimony referred to; and we are of the opinion that none of these contentions on the part of the defendant is well taken. But we are of the opinion that error was committed in the giving of said instruction number 10 on the part of the plaintiff, and that this error was prejudicial.

On account of the giving of this instruction, the judgment is reversed, and the cause remanded for a new trial.